UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K.G., a minor, by her Next Friend,
JESSICA GRAY,                                          Case No. 2:09-cv-11550

            Plaintiff,                                 HONORABLE STEPHEN J. MURPHY, III

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

            Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART SUMMARY JUDGMENT BY
PLAINTIFF KG AGAINST STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, GRANTING PENALTY INTEREST AND GRANTING ATTORNEYS
FEES IN FAVOR OF PLAINTIFF AGAINST STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY (docket no. 19), DENYING SUMMARY JUDGMENT
MOTION BY STATE FARM (docket no. 21) AND DENYING AS MOOT SUMMARY
JUDGMENT MOTIONS BY FARMERS INSURANCE EXCHANGE
(docket no. 24) AND BY ENCOMPASS INSURANCE COMPANY (docket no. 26)**

            KG, a minor, by her next friend and mother Jessica Gray, is suing State Farm

Mutual Automobile Insurance Company ("State Farm"), Encompass Insurance Company

("Encompass") and Farmers Insurance Exchange ("Farmers") for no-fault personal

protection benefits for injuries arising from a hit-and-run accident that occurred in May,

2008.  Encompass insured a vehicle that is alleged to have struck KG.  Farmers insured

a vehicle that was loaned to KG's mother and parked at KG's house at the time of the

accident.  State Farm is the insurance company assigned to be liable for the claim by the

Michigan Assigned Claims Facility under MCL 500.3172 because of a dispute between two

insurance companies over liability for the accident.  This suit was filed by KG in state court

on March 26, 2009 and removed to this Court by defendant Encompass on the basis of

diversity of citizenship.

Before the Court are four cross-motions for summary judgment related to the suit's allegations and seeking of coverage, penalty interest and attorneys fees arising from the hit and run accident.  For the reasons stated below, the Court grants summary judgment in favor of KG against State Farm, the assigned insurer, with penalty interest and attorneys fees in an amount to be determined.  As for KG's summary judgment motion against Farmers and Encompass, and Farmers' and Encompass' motions for summary judgment against KG, the Court does not reach the merits of these motions and rather denies them as moot because KG is not the proper plaintiff in an action against Farmers and Encompass.  The Court finds, instead, that the Michigan statute requires that State Farm, the assigned insurer, is the proper plaintiff in any action against Farmers and Encompass, and may at its option file a suit against those insurance companies pursuant to MCL 500.3172.  Such a suit must be filed in state court, however, because this Court would not have jurisdiction due to a lack of complete diversity between the defendant insurance companies.

### FACTS

On May 22, 2008, the plaintiff, KG, was six years old and resided with her parents, Jessica Gray and Kevin Gray, at 15032 Seymour, Detroit.  Complaint ¶ 7-9.  At approximately 7:45 pm. on that day, KG was struck by an automobile while playing on the front lawn of her home with her brothers. Complaint ¶ 10-11.  The driver of the automobile drove away after striking KG and has never been identified.  KG suffered permanent and severe injuries as a result. Complaint ¶ 12.

Jessica Gray testified that she did not witness the accident that injured KG.  Jessica testified that she was inside cooking dinner when her oldest son ran into the house and told her that KG had been hit by a car.  Jessica Gray dep. p. 34.  Jessica ran outside the house

2

and saw KG "balled up like a wounded animal."  *Id.*  Various neighbors were outside of the house, but Jessica did not know their names because the Gray family had just moved into the house.  *Id.* p. 35.   Jessica herself never saw the car that hit KG.

The complaint alleges that the automobile that struck KG was a 1999 Plymouth Breeze, gray in color, with a VIN # 1P3EJ6X2XN566660 and Michigan License Plate #BLP1248.  Complaint, ¶ 11.  The complaint further alleges that the owner of the 1999 Plymouth, John Domnick Romanowski, insured that vehicle with defendant Encompass.  *Id.*, ¶ 28.  The allegations in the complaint appear to be based upon a police report that identifies a 1999 Plymouth Breeze, VIN # 1P3EJ46X2XN566660, as the vehicle that struck KG.  See Police Report No. 0805220489.1 , Exhibit A to State Farm's Motion for Summary Judgment.   According to that police report, the 1999 Plymouth Breeze stolen from Romanowski was abandoned and recovered at 8:15 p.m. at Schoenherr and Park Grove and impounded.  *Id.*  A second Detroit Police Department Crime Report states that a 1999 Plymouth Breeze owned by John Dominick Romanowski, VIN # 1P3EJ46X2XN566060, was stolen on May 22, 2008 at 6:00 p.m. from a fast food restaurant at 13340 E. Jefferson, Detroit. See Police Report No. 0805220518.1, Exhibit A to State Farm's Response to KG's motion for summary judgment.   This second police report states, however, that Romanowski's vehicle was recovered at 7:00 p.m.  See *id.*, p.3.

On the date of the accident, a 1999 Aerostar Van titled, registered and owned by Eugenia Smith, was sitting in the driveway of the Gray house.  Complaint, ¶ 15.  The 1999 Aerostar van had been loaned to Jessica Gray by Eugenia Smith for temporary use in January 2008.  *Id.* ¶ 16.  The van stopped running about 60 days after Smith loaned the van to Jessica Gray, but Gray still kept it at her house.  *Id.* ¶ 17.   Smith maintained an

3

insurance policy on the 1999 Aerostar through defendant Farmers, and that policy was in full force and effect on the date of the accident. *Id.*

Plaintiff notified both Farmers and Encompass of KG's accident and her claims for no fault benefits under the Farmers policy covering the Aerostar van parked at the Gray house and under the Encompass policy covering the Plymouth that is alleged to have struck KG. Farmers and Encompass both denied payment of no fault benefits to KG.

In accordance with MCL 500.3172(3) (a), KG notified the Michigan Assigned Claims Facility of KG's claims on June 26, 2008.  On July 9, 2009, the Michigan Assigned Claims Facility notified KG that it had assigned defendant State Farm to be liable for and to make payment of KG's no fault claims.  KG has demanded that State Farm pay her medical expenses and other no fault expenses, but State Farm has refused to pay any personal insurance benefits.

KG has now filed suit against all three defendant insurance companies.  In her complaint, KG asserts that the defendants have unreasonably refused to pay or have unreasonably delayed in making proper payments of no fault benefits to KG, contrary to MCL 500.3148.  KG seeks an order of this Court that defendant State Farm, Encompass or Farmers begin paying plaintiff's no fault benefits immediately; or that defendant State Farm to begin paying plaintiff's no fault benefits and pursuant to MCL 500.3172 file suit against defendant Farmers and defendant Encompass to recoup the payments for plaintiff's no fault benefits; and order whichever defendant the Court orders to pay no fault benefits to also pay plaintiff's attorneys fees in the amount of $40,000.00.

### JURISDICTION

This Court has jurisdiction over this matter because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

4

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

## ANALYSIS

I.  <u>KG's Motion for Summary Judgment Against State Farm</u>

The pending summary judgment motions depend upon the interpretation of the Michigan no fault statute, MCL 500.3101 *et seq.* A federal court, sitting in diversity, must apply the law of the forum state. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *Stalbosky v. Belew*, 205 F.3d 890, 893 (6th Cir. 2000). The following rules of statutory construction have been handed down by the Michigan Supreme Court:

> The rules governing interpretation of statutes are well established. The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. *Mull v. Equitable Life*, 444 Mich. 508, 514, n. 7 (1994); *Coleman v. Gurwin*, 443 Mich. 59, 65 (1993). The first step in ascertaining such intent is to focus on the language in the statute itself. *Thornton v. Allstate Ins. Co.*, 425 Mich. 643, 648 (1986). If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Mull* and *Coleman*, *supra*.

> Where the meaning of statutory language is not clear, judicial construction becomes necessary. Courts are to accord statutory words their ordinary and generally accepted meaning. *Id.* Moreover, when courts interpret a particular phrase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute. *Grand Rapids v. Crocker*, 219 Mich. 178, 182-183 (1922). Finally, when courts interpret the no-fault act in particular, they are to remember that the act is remedial in nature and must be

liberally construed in favor of the persons intended to benefit from it. *Gobler v. Auto-Owners Ins. Co.*, 428 Mich. 51, 61 (1987).

*Turner v. Auto Club Ins. Ass'n*, 448 Mich. 22, 27-28 (1995).

The Michigan no-fault insurance act, MCL 500.3101, *et seq.*, is a comprehensive legislative enactment designed to regulate the insurance of motor vehicles in the state of Michigan and the payment of benefits from accidents involving those motor vehicles. *Cruz v. State Farm Mut. Auto Ins. Co.*, 466 Mich. 588, 594-95 (2002). The no-fault act guarantees personal protection insurance (PPI) to victims of motor vehicle accidents in return for restrictions on a victim's ability to file a tort action. *Berkeypile v. Westfield Ins. Co.*, 280 Mich. App. 172, 179 (2008).

The no-fault act also provides rules for determining the priority of insurance companies in cases, such as this, that potentially involve multiple insurance companies. Because KG was not an occupant of a motor vehicle at the time of the accident, MCL 500.3114 and MCL 500.3115 apply to determine which of the various insurance companies involved are responsible for paying benefits arising from KG's injuries.

MCL 500.3114(1) provides:

(1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident.

MCL 500.3115(1) provides:

(1)    Except as provided in subsection (1) of section 3114, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
        (a) Insurers of owners or registrants of motor vehicles involved in the accident.
        (b) Insurers of operators of motor vehicles involved in the accident.

These two sections, operating together, provide that the Court must first look to see if KG is entitled to insurance under MCL 500.3114 as a named insured, the spouse of a

named insured, or a relative of a named insured domiciled in the same household, and, if none of these apply, the Court looks to MCL 500.3115(1) to determine whether coverage is available first from the insurer of the owner or registrant of the vehicle involved in the accident, and second, from the insurer of the operator of the vehicle involved in the accident. If no insurance is available from the owner, registrant or occupant of the vehicle, or there is a dispute between two or more insurers concerning coverage, the claimant may apply to the Michigan Assigned Claims Facility and an insurer operating within the State of Michigan is assigned to pay benefits to the claimant. MCL 500.3172.

Neither KG nor her parents are named insureds under any no-fault policy. As mentioned above, a 1999 Aerostar van was loaned to Jessica Gray from her aunt, Eugenia Smith, at the time of the accident and maintained at the Gray household at that time. The 1999 Aerostar was insured by defendant Farmers, and the named insured under the policy was Eugenia Smith. KG filed an application for benefits from Farmers on November 3, 2008. KG demanded payment from Farmers on the grounds that, that pursuant to Michigan statute, Jessica Gray was an "owner" of the 1999 Aerostar at the time of the accident and that therefore defendant Farmers was the Michigan no-fault insurer of the highest priority. Farmers denied coverage on January 7, 2009 on the grounds that KG is not an insured under the 1999 Aerostar Farmers policy, because neither KG nor her mother Jessica Gray resided with Smith at the time of the accident. See January 7, 2009 Letter from Holly Fountain, Exhibit C to State Farm's Motion for Summary Judgment.

Encompass is the insurer of the vehicle that allegedly and very likely struck KG. The police report of the accident identifies the vehicle that struck KG as a 1999 Plymouth Breeze, 4 door, VIN #1P3EJ46X2XN566660, license plate number BLP 1248, owned by John Dominick Romanowski. Romanowski's vehicle was stolen by an unknown person

shortly before the hit and run driver struck KG in her front yard.  No adult witnessed the accident, but Jessica Gray testified that an female neighbor of hers that Gray cannot now identify told Gray that she wrote down the license plate and gave Gray a piece of paper with the license plate number on it, which Gray then gave to an unknown police officer on the scene.  See Jessica Gray dep. pp. 35-37.  The 1999 Plymouth Breeze owned by Romanowski was insured at the time of the accident by defendant Encompass. On July 31, 2008, KG's attorney submitted to Encompass documents supporting her claim for personal protection insurance benefits and demanded payment of approximately $8,000 in attendant care benefits.  KG submitted other claims on December 11, 2008, February 26, 2009, and March 2, 2009.  Encompass never paid any PPI benefits to KG and ultimately denied the claim on the grounds that the identification of the car was based upon hearsay, and because there is no admissible evidence that the Encompass-insured vehicle struck KG.

In accordance with MCL 500.3172(3) (a), KG notified the Michigan Assigned Claims Facility of KG's claims on June 26, 2008 and the fact that both Farmers and Encompass disputed coverage.  On July 9, 2009, the Michigan Assigned Claims Facility notified KG that it had assigned defendant State Farm to be liable for and to make payment of KG's no fault claims.  KG has demanded that State Farm pay her medical expenses and other no-fault expenses, but State Farm has refused to pay any personal insurance benefits.

Under MCL 500.3172, an assigned claims insurer may be assigned by the assigned claims facility to pay no-fault personal injury benefits where personal injury arises out of the ownership, occupation or use of an automobile in the State of Michigan in any one of four circumstances: (1) if no personal protection insurance is applicable to the injury, (2) if no personal protection insurance can be identified; (3) if the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more

automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss; or (4) where the only identifiable insurance is inadequate to provide sufficient benefits because of the financial inability of the insurers to fulfil their obligations.[1] The Court needs to look no further than this statute to grant summary judgment to KG because State Farm was assigned to pay benefits due to a dispute between two or more automobile insurers and, under MCL 500.3172, as the assigned insurer State Farm has an absolute obligation to pay no-fault benefits to KG once KG submitted "reasonable proof of the fact and the amount of loss."

A review of MCL 500.3172 also convinces the Court that any claims that other insurers are liable for benefits arising from KG's injuries are not properly before this Court. Section 500.3172(3) provides a detailed mechanism for dealing with cases, such as this, where two or more insurers dispute their obligation to pay no-fault benefits.[2] The statute

---

[1]Sec. 3172. (1) A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle in this state may obtain personal protection insurance benefits through an assigned claims plan if no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. In such case unpaid benefits due or coming due are subject to being collected under the assigned claims plan, and the insurer to which the claim is assigned, or the assigned claims facility if the claim is assigned to it, is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility.

MCL 500.3172

[2]MCL 500.3172(3) provides as follows:

(3) If the obligation to provide personal protection insurance benefits cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, and if a method of voluntary

provides that  (1) a claimant may notify the assigned claims facility of the inability of the insurers to determine their statutory obligations, (2) the claim shall be assigned to an insurer who "shall immediately provide personal protection insurance benefits to the claimant"; (3) an action "shall immediately be commenced on behalf of the assigned claims facility by the insurer to whom the claim is assigned in circuit court for the purpose of declaring the rights and duties of any party;" (4) the insurer to whom the claim is assigned "shall join as party defendant each insurer disputing either the obligation to provide personal protection insurance benefits or the equitable distribution of the loss among the insurers;" (5) the court shall declare the rights and obligations of the various parties; and (6) after hearing the action, the circuit court shall determine the insurer or insurers obligated

---

payment of benefits cannot be agreed upon among or between the disputing insurers, all of the following shall apply:

(a) The insurers who are parties to the dispute shall, or the claimant may, immediately notify the assigned claims facility of their inability to determine their statutory obligations.

(b) The claim shall be assigned by the assigned claims facility to an insurer which shall immediately provide personal protection insurance benefits to the claimant or claimants entitled to benefits.

(c) An action shall be immediately commenced on behalf of the assigned claims facility by the insurer to whom the claim is assigned in circuit court for the purpose of declaring the rights and duties of any interested party.

(d) The insurer to whom the claim is assigned shall join as parties defendant each insurer disputing either the obligation to provide personal protection insurance benefits or the equitable distribution of the loss among the insurers.

(e) The circuit court shall declare the rights and duties of any interested party whether or not other relief is sought or could be granted.

(f) After hearing the action, the circuit court shall determine the insurer or insurers, if any, obligated to provide the applicable personal protection insurance benefits and the equitable distribution, if any, among the insurers obligated therefor, and shall order reimbursement to the assigned claims facility from the insurer or insurers to the extent of the responsibility as determined by the court. The reimbursement ordered under this subdivision shall include all benefits and costs paid or incurred by the assigned claims facility and all benefits and costs paid or incurred by insurers determined not to be obligated to provide applicable personal protection insurance benefits, including reasonable attorney fees and interest at the rate prescribed in section 3175 as of December 31 of the year preceding the determination of the circuit court.

to provide benefits and the equitable distribution and shall order *reimbursement* to the assigned claims facility from the insurer or insurers to the extent determined by the court. *See* MCL 500.3172(3).  The assigned claims facility must make an initial determination of the claimants eligibility for benefits and deny obviously ineligible claims.  MCL 500.3173a.

State Farm, the insurer assigned to KG's claim by the assigned claims facility, complied with none of these provisions.  Rather, State Farm refused to pay KG and required KG to sue to obtain the benefits due.   State Farm argues that its refusal to pay KG is justified because this is not a "bona fide" dispute between two insurance carriers. Specifically, State Farm argues that Encompass (the insurer of the vehicle that allegedly struck KG) "has known since day one that it was in some level of priority, most likely highest, in the payment of Plaintiff's first-party benefits" and that Encompass should have paid KG and then filed suit against Farmers.  State Farm states that the parties instead "have attempted to create a priority dispute, needlessly turning to the already overloaded Assigned Claims Fund to take on the burden."  State Farm relies on the case *of Carson v. Auto Owners Insurance Co.*, 181 Mich. App. 600, 610 for the proposition that "[u]nder the no-fault act, the Assigned Claims Facility is essentially an insurer of last priority" and on the dicta from *Allstate Ins. Co. v. Citizens Ins. Co. of Am.*, 118 Mich. App. 594, 603-04 (1982) stating that "whenever a priority question arises between two insurers, the preferred method of resolution is for one of the insurers to pay the claim and sue the other in an action of subrogation."  Neither of these cases address the ability of the assigned claims insurer to deny coverage to an injured person pending determination of the responsible insurer and therefore neither are on point.

State Farm's arguments defy the plain language of the statute.  MCL 500.3172 uses the mandatory "shall" to describe the duty of an assigned claims insurer to pay benefits to

a claimant once an insurer has been assigned in the event of a dispute between two or more insurers concerning their obligation to provide coverage.  The statute grants no authority to an assigned insurer to determine the relevant merits of the dispute between the other insurers or to determine whether their dispute is "bona fide."[3]  Rather, Section 500.3172 unambiguously requires the assigned insurer to immediately pay benefits to a claimant entitled to benefits.  MCL 500.3172(3)(b).

The case of *Spencer v. Citizens Ins. Co.*, 239 Mich. App. 291 (2000),[4] while not completely on point, is helpful in answering the question of whether an assigned claims insurer can  refuse to pay a claimant based upon that insurer's unilateral determination that another insurer is liable.  The plaintiff in that case, Spencer, was a victim of a hit-and-run accident.  *Id.* at 294.  At the time of the accident, Spencer did not have a no-fault insurance policy and did not reside in a household with someone with a no-fault insurance policy, so the Assigned Claims Facility directed defendant Citizens Insurance Co. ("Citizens") to provide Spencer with benefits.  *Id.* at 295.  Citizens initially payed Spencer benefits, but ceased paying benefits in December 1995 when it discovered that Spencer had sued the owner of the vehicle that had allegedly struck him and settled for $20,000, the policy limits of the Allstate policy covering the vehicle.  *Id.*  Citizen took the position that Spencer's settlement with Allstate showed that the plaintiff had identified a higher-priority insurer, and that it relieved Citizens of its obligation as the assigned insurer to pay benefits.  *Id.*  The

---

[3]There is limited authority to deny benefits as an initial matter by the assigned claims facility to make an initial determination of the claimant's eligibility for benefits and to deny "obviously ineligible" claims.  MCL 500.3173a.

[4]*Spencer* is a Court of Appeals decision, not a Michigan Supreme Court decision, but is consistent with the no-fault act and Michigan Supreme Court precedent interpreting the act and is therefore persuasive on the issue of how the Michigan Supreme Court would resolve the issue before this Court.

trial court granted Citizens' motion for summary disposition, but the Court of Appeals reversed. *Id.* at 310. It held that there was no provision in the no-fault act that permitted an assigned claims insurer to cease paying benefits in the event it subsequently discovers a higher-priority insurer. *Id.* at 304-305. The *Spencer* court stated that:

> The determinative issue then becomes whether any provision of the no-fault act permits defendant, the assigned-claim insurer, to cease paying assigned-claim benefits in the event it subsequently discovers a higher priority insurer. For several reasons, we conclude that an assigned-claim insurer that subsequently ascertains a higher priority insurer cannot thereafter simply refuse to pay the assigned-claim insured party further benefits. First, absolutely no language in the assigned-claims provisions of the no-fault act specifically relieves an insurer to whom the Assigned Claims Facility has assigned a claim of its obligation to pay benefits on the basis that the assigned insurer later discovers another applicable insurer. Absent the Legislature's authorization of this particular relief, we will not simply infer its availability as a matter of logic. *In re SR*, 229 Mich.App. 310, 314, 581 N.W.2d 291 (1998) ("[N]othing will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself.").

*Spencer*, 239 Mich. App. at 304-305. The Court also noted that the statute provided another recourse to the assigned claims insurer who later discovered a higher priority insurer, which was to pay the claimant and then seek reimbursement from and enter into settlements with appropriate third parties, including higher-priority insurers. *Id.* at 305-06. Finally, the court noted that its conclusion was supported by the public policy behind the no-fault act, which was "to provide victims of motor vehicle accidents assured, adequate, and prompt reparations for certain economic losses." *Id.* at 307-08.

In *Rodriguez v. Farmers Ins. Co.*, No. 262443, 262444, 2006 WL 198477 (Mich. App. Jan. 26, 2006), the Court of Appeals relied upon *Spencer* to rule that the no-fault act requires an assigned claims insurer to make prompt payment of benefits to the claimant and, if another insurer was found liable, the assigned claims insurer could seek reimbursement from that insurer. *Rodriguez*, 2006 WL 198477 at *3. The Court also rejected Farmer's argument that an assigned claims insurer can only be liable for sanctions if it is ultimately found obligated to pay benefits. The *Rodriguez* court also found that the

13

Court of Appeals holding in *Spencer* applied equally to the situation where the assigned claims insurer completely refused to make any payments to the plaintiff: "It would defy logic to hold here that Farmers was not liable for payment, and therefore not subject to the penalties for overdue payment, merely because it refused to ever make payment rather than making payment and subsequently discontinuing those payments as in *Spencer.*" *Rodriguez*, 2006 WL 198477 at *6.

*Spencer* and *Rodriguez* are not completely on point here because in those cases the assigned claims insurer was appointed pursuant to MCL 500.3172(1) due to an inability to identify any applicable insurance, whereas in this case State Farm was appointed because of a dispute between two or more insurers. This distinction, however, does not produce a different result here. The language of MCL 500.3172 no more gives an assigned claims insurer the discretion to refuse benefit payments to a claimant because the insurer determines that it was not properly assigned a claim because the dispute between the other insurers is not "bona fide" than it gives an assigned claims insurer the discretion to discontinue benefit payments on the grounds that it has identified a higher-priority insurer. The reasoning of the courts in *Spencer* and *Rodriguez*, furthermore, is equally applicable in the present case: there is no language in MCL 500.3172 that specifically permits an assigned insurer authority to refuse to pay benefits based on its determination that an alleged dispute between other insurers lacks substance; the no-fault act has another recourse to an assigned insurer who contends that another insurer should be liable to pay benefits; and requiring the assigned insurer to pay and then seek reimbursement from other responsible insurers furthers the public policy behind the act, to provide victims of motor vehicle accidents assured, adequate, and prompt reparations. In fact, there appears to be even less reason to permit an insurance company to evade payment when that

14

insurance company has been assigned a claim due to a dispute between two or more insurance companies than where it is assigned for failure to identify any applicable insurance, because MCL 500.3172(3), which applies only to situations where an insurance company is assigned due to a dispute between insurance companies, creates a specific procedure for the assigned insurer to recover from the higher priority insurers.   MCL 500.3172(3) specifically provides in mandatory language that in such a case the assigned claims insurer *shall* pay the claimant and *shall* institute an action against the other insurers to determine the rights of all parties.  The Court concludes that the statute, as applied here, requires State Farm to pay benefits to KG whether or not State Farm believes the dispute between the other insurers is "bona fide."

State Farm argues that requiring it, as the assigned claims insurer, to pay benefits and thereafter seek contribution is a waste of judicial resources.  The legislature, however, has made a determination, reflected in MCL 500.3172, that requiring the assigned claims insurer to pay the injured person and seek contribution from higher-priority insurers best promotes the policy of ensuring prompt compensation to the injured person, whether or not it is, in State Farm's view, the most efficient use of judicial resources.  The Court cannot disregard the plain language of the statute merely because a party required to comply with it contends it to be inefficient.

Based on the language of the statute, the Court concludes that State Farm is liable, as the assigned claims insurer, to immediately pay benefits to KG. The Court therefore will grant summary judgment in favor of KG and against State Farm.

II.   <u>Penalty Interest</u>

A Michigan no-fault insurer has a duty to pay personal protection insurance benefits within thirty days after the insurer receives reasonable proof of the fact and of the amount

of loss sustained.   MCL 500.3142(3)*; Cruz v. State Farm Mut. Auto Ins. Co.*, 466 Mich. 588, 600 (2002).  Benefits become "'overdue' when an insurer fails to pay 'within 30 days after the insurer receives reasonable proof of the fact and of the amount of loss sustained.'" *Moore v. Secura Ins.*, 482 Mich. 507, 510 (2008) (quoting MCL 500.3142(2)).  An overdue payment bears simple interest at the rate of 12% per annum.  MCL 500.3142.  State Farm is therefore liable to KG for penalty interest of 12% per annum running from thirty days after State Farm received reasonable proof of the fact and amount of loss sustained.

The record reflects that State Farm was appointed assigned claims insurer on July 6, 2008.  State Farm does not appear to dispute that KG submitted reasonable proof of the fact and amount of loss sustained as of that date, so penalty interest is appropriate on any claim that was unpaid for 30 days after that date.

III.   Attorneys Fees

A.   State Farm's Liability for Attorneys Fees

The no-fault act provides for attorneys fees to a claimant under certain circumstances. Under MCL 500.3148(1), where benefits are overdue, reasonable attorneys fees "shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer *unreasonably refused to pay the claim or unreasonably delayed in making proper payment*."  *Moore*, 482 Mich. at 517 (quoting MCL 500.3148) (emphasis supplied by *Moore* court).

> The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured.  Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay.  The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty.

*Ross v. Auto Club Group*, 481 Mich. 1, 11 (2008) (citations omitted).   Thus, the determinative factor is not whether an insurer is ultimately found responsible for paying

16

benefits but whether its initial refusal to pay was unreasonable.  A refusal by an insurer to pay benefit may be reasonable even if the carrier is ultimately found to be liable for the benefits.  In *Ross*, 481 Mich. at 1, for example, the self-employed plaintiff sought work-loss benefits from his no-fault carrier, but the insurer defendant denied work-loss benefits in reliance on a Michigan Court of Appeals case.  The Supreme Court held in *Ross* that while the plaintiff was entitled to past-due work-loss benefits, the plaintiff was not entitled to attorneys fees or penalty interest because the insurer's decision to deny work loss benefits was in reliance on the Michigan Court of Appeals holding and was therefore not unreasonable.

The *Ross* decision makes clear that where an insurer has refused or delayed paying benefits once it receives reasonable proof of the fact and amount of loss, there is a presumption that this delay is unreasonable and the burden shifts to the insurer to show that its decision was reasonable.  *Ross*, 481 Mich. at 11.  Here, in light of the unambiguous requirements of MCL 500.3172, defendant State Farm has failed to meet its burden of showing that it acted reasonably in refusing to pay plaintiff's no-fault benefits after having been assigned the claim by the Assigned Claims Facility.  The language of MCL 500.3172 imposes upon the assigned claims insurer an unambiguous duty to pay, which the assigned claims insurer cannot unilaterally refuse based upon its judgment that the dispute between the other insurance companies is not bona fide.  The only authority cited by State Farm in support of its position that it can unilaterally refuse to pay no-fault benefits after being assigned to pay due to a dispute between insurance companies is a statement by the Michigan Court of Appeals, in *Cason v. Auto Owners Ins. Co.*, 181 Mich. App. 600, 610 (1989), that the assigned claims insurer is "essentially an insurer of last priority."  This statement, standing alone, is not sufficient to meet State Farm's burden of showing that its

17

refusal or delay in paying "is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross*, 481 Mich. at 11.  Rather, as discussed above, both the statute and all authority construing the statute show an absolute duty to pay benefits on the part of an assigned claims insurer, subject to the assigned claims insurer's right to seek contribution or indemnification by other parties.

For these reasons, the Court holds that State Farm is liable for plaintiff's attorneys fees based upon its unreasonable refusal to pay plaintiff's benefits.

B.  Amount of Attorneys Fees

Plaintiff's attorney seeks attorneys fees in an amount of $40,000.  Plaintiff's attorney has not, however, submitted any documentation from which the Court can determine that the amount sought is reasonable.  Plaintiffs attorney has also failed to comply with Rule 54.1.2 of the Local Rules of the Eastern District of Michigan, which requires, *inter alia*, a detailed affidavit of counsel supporting the reasonableness of the claimed attorneys fees.

The reasonableness of attorneys fees claimed under MCL 500.3148 should be determined with reference to the factors outlined in Rule 1.5 of the Michigan Rules of Professional Conduct.  *University Rehab. Alliance, Inc. v. Farm Bureau General Ins. Co. of Michigan*, 279 Mich. App. 691,  698-99 (2008).

The submissions of the plaintiff here are insufficient to determine a reasonable attorneys fee.  Given that the Court determines that attorneys fees are appropriate here, the Court will grant the plaintiff 28 days from the date of this order in which to submit a brief and affidavits substantiating her claim that the requested attorneys fees are reasonable.

IV.  Summary Judgment Motions by KG, Farmers and Encompass

The Court will not reach the remaining summary judgment motions filed by KG against Farmers and Encompass and by Farmers and Encompass against KG because the Court

18

finds that they are mooted by the Court's order granting summary judgment to KG against State Farm.  The order granting summary judgment in KG's favor against State Farm resolves all of KG's claims against the insurance companies.  It appears to the Court that the true party in interest now is State Farm, who has a potential claim for contribution or indemnification against Encompass and possibly Farmers.  It also appears to the Court that KG lacks standing to maintain her suit against the remaining insurers because she does not have a claim against those other insurers that is redressable by any order of this Court. *Cf. Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (in order to sue in federal court, plaintiff must suffer injury-in-fact, caused by the defendant, which is potentially redressable by a favorable decision).  It further appears that State Farm cannot be substituted for KG as plaintiff under Rule 17 of the Federal Rules of Civil Procedure, because such substitution would destroy the diversity jurisdiction that is essential for this case to be litigated in this court.  The Court therefore will order KG to show cause why her case against Encompass and Farmers should not be dismissed for lack of standing and failure to be brought by the real party in interest.  If plaintiff does not show cause within 28 days, her case against Encompass and Farmers will be dismissed without prejudice.

As for the dispute as to which insurance company will ultimately be found to be the highest priority insurer, it appears that this is not the appropriate forum for determining the various rights of the remaining parties.  As discussed above, MCL 500.3172(3) provides a procedure in cases in which an assigned claims insurer is assigned because of a priority dispute between insurers.  That statute requires the assigned claims insurer to file suit in circuit court against the other potentially liable insurers for a declaration of rights. The person seeking benefits is not a party to such a suit.  None of the insurers has filed a cross-claim against any other insurer, nor could they in this Court because there appears to be

no diversity of citizenship between the defendant insurers. Thus, any claim State Farm might have for indemnification or contribution against either Encompass or Farmers will have to be pursued in state circuit court.

## ORDER

For the reasons set forth above, it is hereby **ORDERED** that plaintiff's motion for summary judgment (docket no. 19) is **GRANTED** as to defendant State Farm and **DENIED AS MOOT** as to defendants Encompass and Farmers;

It is further **ORDERED** that defendant State Farm's motion for summary judgment (docket no. 21) is **DENIED**;

It is further **ORDERED** that defendant Farmers Insurance Exchange's motion for summary judgment (docket no. 24) is **DENIED AS MOOT;**

It is further **ORDERED** that defendant Encompass Insurance Company's motion for summary judgment (docket no. 26) is **DENIED AS MOOT;**

It is further **ORDERED** that defendant State Farm shall begin paying plaintiff's no-fault benefits immediately and pay all past-due no-fault benefits;

It is further **ORDERED** that defendant State Farm shall also pay plaintiff penalty interest pursuant to MCL 500.3148(1) at a rate of 12% accruing from the date State Farm received reasonable proof of the fact and amount of loss;

It is further **ORDERED** that State Farm is liable for reasonable attorneys fees in an amount to be determined by the Court. The plaintiff has 28 days from the date of this order in which to submit a brief and affidavits, in compliance with E.D. Mich. L.R. 54.1.2, substantiating her claim that the requested attorneys fees are reasonable. Defendant State Farm may file a response to plaintiff's submissions within 14 days from the date plaintiff

files her brief and affidavits.  Plaintiff may file a reply within 7 days after defendant State

Farm files its response;

It if further **ORDERED** that pursuant to MCL 500.3172, defendant State Farm may file

suit against defendant Farmers and defendant Encompass to recoup the payments for

plaintiff's No-fault benefits; and

Finally, plaintiff is **ORDERED TO SHOW CAUSE** within 28 days of this order why her

claims against Encompass and Farmers should not be dismissed without prejudice for lack

of standing and for failure to be brought by the real party in interest.

**SO ORDERED.**


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 1, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on December 1, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager